FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

97 JAN 13 AM 10: 47

U.S. DISTRICT COURT
N.D. OF ALABAMA

SHELBY I. SLOAN,  }
  }
  Plaintiff,  }
  }     CIVIL ACTION NO.
vs.  }
  }     CV 96-AR-0264-M
MARVIN T. RUNYON, Postmaster  }
General,  }
  }
  Defendant.  }

ENTERED
JAN 13 1997

### MEMORANDUM OPINION

The court has before it a motion for summary judgment filed by defendant, Marvin T. Runyon, Postmaster General ("Postmaster"). Plaintiff, Shelby I. Sloan ("Sloan") alleges that the postmaster, through his agent Joey Sherman ("Sherman"), discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("the ADEA"), and/or retaliated against her in violation of Title VII through numerous specific acts. Because genuine issues of material fact exist with regard to some of Sloan's claims, the Postmaster's motion for summary judgment will be granted in part and denied in part.

### I. Relevant Facts

Sloan, a white female over 40 years of age, was employed by

the United States Postal Service ("USPS") as Postmaster in Grant, Alabama. On or about May 25, 1993, Sherman, Sloan's supervisor, gave Sloan an involuntary transfer from the Grant, Alabama post office and replaced her with a younger male employee.[1]

Subsequently, on or about August 11, 1993, Sherman referred Sloan to the Employee Assistance Program ("EAP") contractor Dale Evans ("Evans") based on his allegation that she had an insubordinate attitude. At the time he referred Sloan, Sherman informed Evans that the referral was pending Sloan's removal from the Postal Service. Then, on or about September 3, 1993, Sherman issued a letter warning to Sloan for an alleged failure to follow instructions. Sherman utilized this letter to propose a downgrade of Sloan from the position of Postmaster in Grant, Alabama to Postmaster in Princeton, Alabama. However, the Merit System Protection Board reversed the downgrade.

After the reversal of the downgrade, Sherman allegedly denied Sloan her per diem and mileage for travel costs to Princeton, to which she had been transferred. This denial of the per diem and the travel costs is allegedly in violation of the

---

[1] There is no evidence before this court that Sloan was replaced, much less by a younger male, however, because the Postmaster does not argue this point, the court will proceed as if the asserted facts in the complaint are true. In fact, the parties have provided very little evidence with regard to the underlying facts in this case. However, because the Postmaster does not contest the ovewhelming majority of facts, at least at this stage of the litigation, this court will proceed as if the asserted facts are true.

2

Postal Service's Handbook F-10.

On or about February 11, 1994, Sherman allegedly ordered Sloan to come to work even though there existed high water that block her safe passage to her place of duty. In the alternative, Sherman informed Sloan that she was to wait out the high water and then come to work or to periodically check the height of the water to see if she could make it to work. Sherman allegedly issued his orders in a rude and hostile tone. Sloan allegedly became upset and depressed as a result of this incident and has been receiving Federal Worker's Compensation Benefits since February 11, 1994, for her condition of Major Depression and General Anxiety Disorder.

Sloan alleges that all of these incidents were acts of intentional discrimination, and that Sherman, as an agent of the Postmaster,[2] intended to discriminate against her because of her gender, her age, and in retaliation for her having filed an administrative discrimination complaint against Sherman.

## II. Analysis

### A. Rule 56

Rule 56 states, in pertinent part:

---

[2] For the purposes of her Title VII claims, Sloan has properly named Marvin T. Runyon, Postmaster General, as defendant as directed in 42 U.S.C. § 2000e-16(c). The ADEA does not contain a similar provision. However, for the purposes of this action, service upon Runyon in his capacity as Postmaster will suffice as notice to the USPS of Sloan's ADEA claims.

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). The Postmaster has moved for summary judgment in the present action.

   B. *Federal Employment Compensation Act ("FECA")*

The Postmaster argues that regardless of whether the Postal Service is liable for discriminating and retaliating against Sloan, Sloan is not entitled to receive anything beyond the federal worker's compensation benefits she is currently receiving. The Postmaster states that under FECA, 5 U.S.C. § 8101, *et seq.*, Sloan's receipt of federal worker's compensation is the exclusive remedy for her work-related injuries. Accordingly, the Postmaster argues that Sloan is foreclosed from pursuing a Title VII and/or an ADEA claim and, as a result, the Postmaster is entitled to summary disposition pursuant to rule 56 Fed. R. Civ. P. In response Sloan argues that she is not precluded from pursuing her Title VII and/or her ADEA claims by

4

FECA.

Congress enacted FECA to provide worker's compensation benefits for federal employees who sustain injuries during the course of their employment. Federal employees is inclusive of postal employees. *See* 39 U.S.C. § 1005(c) (1996). FECA provides that when a plaintiff seeks to recover damages "the liability of the United States or an instrumentality thereof with respect to the injury or death of an employee [while in the performance of her duty] is exclusive." *See* 5 U.S.C. § 8116(c)(1996). In addition, determinations by the Department of Labor under FECA that a federal employee is entitled to worker's compensation are not subject to judicial review. See 5 U.S.C. § 8128(b)(2)(1996). In the present action the Department of labor has determined that Sloan is entitled to and has now been receiving worker's compensation benefits.

In analyzing the relevant case law, the overwhelming majority of cases that have addressed the exclusivity of FECA with regard to Title VII claims and all the circuit courts that have addressed the same issue have determined FECA does not provide the exclusive remedy for federal employees who bring suits premised upon Title VII. *See Nichols v. Frank*, 42 F.3d 503 (9th Cir. 1994); *Miller v. Bolger*, 802 F.2d 660 (3d. Cir. 1986); *Karnes v. Runyon*, 912 F. Supp. 280, 284 (S.D.Ohio 1995)(*citing*

5

*Deford v. Secretary of Labor*, 700 F.2d 281 (6th Cir. 1983)); *Callan v. Runyon*, 903 F. Supp. 1285, (D. Minn. 1994)(citing cases), *aff'd*, 75 F.3d 1293 (8th Cir. 1995); *George v. Frank*, 761 F. Supp. 256, 259 (S.D.N.Y. 1991). While the courts follow different rationales in determining that FECA does not preclude a claim based upon Title VII, it is apparent to this court that such a claim is not precluded.

The better reasoned viewpoint is that FECA was designed solely as a substitute to common law tort actions against the United States for tortious injury authorized by statutes similar to the Federal Torts Claims Act ("FTCA"). *See Miller*, 802 F.2d at 663; *Karnes*, 912 F. Supp. at 285. *See also United States v. Demko*, 385 U.S. 149, 151, 87 S. Ct. 382, 383-84 (1966) (compensation laws are, generally, substitutes for common law tort actions). This argument is further enhanced by the fact that a significant number of the cases that the Postmaster cites as holding that FECA is the exclusive remedy deal <u>solely</u> with claims brought pursuant to the FTCA. *See, e.g., Grijalva v. United States*, 781 F.2d 472 (5th Cir.)(holding that federal employees are precluded by FECA from obtaining renumeration pursuant to the FTCA), *cert. denied*, 479 U.S. 822, 107 S. Ct. 891 (1986). Further, this court agrees with the Third Circuit's lengthy analysis of the legislative history of FECA, in which the

Third Circuit noted that when Congress amended Title VII to add federal employees, it made no mention of FECA preempting recovery under Title VII. *Miller*, 802 F.2d at 664. Additional evidence of the fact that FECA was not intended to preclude actions premised upon Title VII is found in the fact that Title VII provides distinctive types of relief. *Id*. at 665. Accordingly, this court finds that injuries caused by discrimination in violation of Title VII and/or the ADEA are not covered by FECA. Therefore, FECA does not preclude recovery for injuries caused by discrimination in violation of Title VII and the ADEA.[3] The Postmaster's motion for summary judgment with regard to alleged FECA exclusivity is due to be denied.[4]

---

[3] This opinion does not address the exclusivity of FECA with regard to discrimination in violation of the Rehabilitation Act or the Americans with Disabilities Act ("ADA"). The Postmaster in his brief relies heavily on the opinion in *Alexander v. Frank*, 777 F. Supp. 516 (N.D. Tex. 1991), and draws the court's attention to *Black v. Frank*, 730 F. Supp. 1087 (S.D. Ala. 1990). Both of those cases deal with the exclusivity of FECA with regard to claims for discrimination in violation of the Rehabilitation Act. In fact, the court in *Alexander* addresses the merits of the Title VII and the ADEA claims but holds that it could not award a federal employee a remedy on a rehabilitation discrimination claim due to the exclusivity of FECA. *See generally Alexander*, 777 F. Supp. 516. It appears that there are two lines of cases developing under FECA. First, FECA is the exclusive remedy for on-the-job injuries and may be a bar to an action concerning the same injury under the Rehabilitation Act and the ADA. *See Stubler v. Runyon*, 892 F. Supp. 228, 230 (W.D. Mo.), *aff'd*, 56 F.3d 69 (1995). Second, FECA is not a bar to claims of plaintiff that his/her injury followed some form of unlawful Title VII or ADEA discrimination. *Id*.

[4] This court is aware of the fact that part of a recovery under Title VII may be offset by the FECA benefits that Sloan is receiving and has been receiving since February 11, 1994. Sloan is not entitled to duplicative benefits and therefore, any award may "operate to reduce the back pay otherwise allowable." *See* 42 U.S.C. § 2000e-5(g)(1)(1996).

7

*C. Counts II and V*

*i. The Employment Assistance Program ("EAP")*

In Count II of her complaint, Sloan alleges that Sherman referred her to the EAP. While the court would have no compunction in finding that Sherman could create Title VII and ADEA liability for defendant as an agent of the USPS, the court seriously doubts that referring Sloan to the EAP is actionable under either of these statutes as a personnel action. As stated above, the operative language in both § 2000e-16 and § 633a giving rise to a private enforcement action under the ADEA and Title VII is a "personnel action affecting" the putative plaintiff. While the court's research into what Congress meant by "personnel action" has been less than fruitful, it is mindful of *Ferguson v. Veterans Admin.*, 723 F.2d 871, 872 (11th Cir.), cert. denied sub nom. *Ferguson v. Walters*, 469 U.S. 1072 (1984), wherein the Eleventh Circuit expressly adopted the reasoning of the Fourth Circuit in *Page v. Bolger*, 645 F.2d 227 (4th Cir.), cert. denied, 454 U.S. 892, 102 S. Ct. 388 (1981). In *Page*, the Fourth Circuit persuasively described the scope of employment decisions contemplated by § 2000e-16(a):

> The proper object of inquiry in a claim of disparate treatment under § [2000e-16] is whether there has been "discrimination" in respect of "*personnel actions* affecting (covered) employees or applicants for employment ...." 42 U.S.C. § 2000e-16(a) (emphasis

8

>    added). Disparate treatment theory as it has emerged
>    in application of this and comparable provisions of
>    Title VII, most notably § 703(a)(1), 42 U.S.C. §
>    2000e-2(a)(1), has consistently focused on the
>    question whether there has been discrimination in what
>    could be characterized as <u>ultimate employment decisions
>    such as hiring, granting leave, discharging,
>    promoting, and compensating</u>. This is the general level
>    of decision we think contemplated by the term
>    "personnel actions" in § [2000e-16]. It is the level
>    focused upon in the major Supreme Court decisions
>    establishing and refining the substantive and
>    procedural elements of individual disparate treatment
>    theory. *See, e.g., Board of Trustees of Keene State
>    College v. Sweeney*, 439 U.S. 24, 24-25 & nn.1 & 2, 99
>    S. Ct. 295, 295-296 & nn.1 & 2, (1978) (failure to
>    promote); *Furnco [Construction Co. v. Waters]*, 438 U.S.
>    at 576-77 & n.8, 98 S. Ct. at 2949 & n.8 (failure to
>    hire); *McDonnell Douglas [Corp. v. Green]*, 411 U.S. at
>    802, 93 S. Ct. at 1824 (same).

*Page*, 645 F.2d at 233 (emphasis added). In stating that there must be an "ultimate employment decision" in order to constitute a "personnel action" under 42 U.S.C. § 2000e-16(a) the Fourth Circuit determined that there are many "interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscription of . . . Title VII." *Id.* Instead, intermediate decisions are not actionable under Title II. Such decisions are simply steps along the way to the ultimate employment decision. "Title VII was [not designed] to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir.

9

1995). While the *Page* and *Dollis* decisions necessarily discussed only the breadth of personnel actions contemplated in § 2000e-16(a), the court finds the definition equally applicable to § 633a. *See Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (courts may look to the formidable body of Title VII law where the prohibitions found in the ADEA are similar to those found in Title VII).

Looking to *Page* and *Dollis*, it appears that referring Sloan to the EAP is not a "personnel action" contemplated by either § 2000e-16 or § 633a. Instead, referring Sloan to the EAP falls into the category of a mediate and/or an interlocutory decision along the way to the ultimate "personnel action" conceded by the Postmaster as the letter of warning and subsequent demotion of Sloan. Accordingly, inasmuch as Sloan complains that Sherman's referring her to the EAP constitutes discriminatory treatment under either Title VII or the ADEA the Postmaster's summary judgment motion is due to be granted and that portion of the action will be dismissed.

### ii. High Water

In Count V of her amended complaint, Sloan alleges that Sherman's order to Sloan to drive through high water, wait until it receded and/or periodically check the height of the water on Highway 65 was an impermissible discriminatory act under Title

VII and the ADEA. In spite of the rather limiting nature of the definition provided by *Page*, the court assumes that Sloan believes that Sherman's orders are actionable under Title VII and ADEA due to the more expansive prohibitions against certain actions by employers found in other provisions of those acts. Most notably, it is "unlawful ... for an <u>employer</u> to ... discriminate against any individual with respect to his <u>compensation, terms, conditions, or privileges of employment</u>, because of such individual's" sex or age. 42 U.S.C. § 2000e-2(a)(1) (sex); 29 U.S.C. § 623(a)(1) (age) (emphasis added). While this court might be otherwise inclined to interpret a condition of employment to include orders that might have some effect on plaintiff's safety,[5] both Title VII and the ADEA exempt "the United States, or a corporation wholly owned by the Government of the United States" from the definition of "employer." 42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b). This exemption includes the Postmaster.

Based upon a straightforward interpretation of Title VII and the ADEA, Sloan has no cause of action against defendant for discrimination in a condition of her employment under either §

---

[5] Sloan offers no evidence that her safety was ever placed in jeopardy. In fact, she appears to indicate that if she had followed Sherman's initial orders and attempted to cross the water and/or wait until the water receded she would have been placed in peril. Obviously, she did not do this, as she offers no evidence that this did indeed occur.

11

2000e-2(a)(1) or § 623(a)(1) because defendant is not an "employer" subject to those sections. Moreover, looking to *Page* and *Dollis*, it likewise appears that Sherman's orders to Sloan are not "personnel actions" contemplated by either § 2000e-16 or § 633a. Thus, inasmuch as Sloan complains that Sherman's orders constitute discriminatory treatment under either Title VII or the ADEA, defendant's motion is due to be granted and that portion of the action will be dismissed.

### III. Conclusion

Sloan has alleged that defendant, through his agent Sherman, has both discriminated against her in violation of Title VII and the ADEA and retaliated against her in violation of Title VII. Because Sloan can prove no set of circumstances that would entitle her to relief with regards to her claims involving the referral to the EAP and Sherman's orders surrounding the high water, the Postmaster's motion for summary judgment will be granted as to those claims, and Counts II and V will be dismissed with prejudice. In all other respects, the Postmaster's motion for summary judgment will be denied.

A separate and appropriate order will be so entered.

DONE this /3 day of January, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT